## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACOB MARTIN,<br><br>     Plaintiff,<br><br>  v.<br><br>LACKAWANNA COUNTY, et al.,<br><br>     Defendants. | CIVIL ACTION NO. 3:12-CV-01507<br><br>(KOSIK, J.)<br>(MEHALCHICK, M.J.) |

### REPORT AND RECOMMENDATION

This is a *pro se* action for damages and declaratory relief, asserting several federal civil rights and state tort claims against various defendants, brought in this Court pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. In a 94-page, 454-paragraph complaint, prisoner-plaintiff Jacob Martin asserts that the Defendants have violated his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution, under the Americans with Disabilities Act, and under unspecified federal confidentiality laws. Martin also asserts a variety of state law tort claims arising out of the same alleged conduct of the Defendants. At the time of filing of the original complaint in this matter, Martin was incarcerated at SCI Chester, located in Delaware County, Pennsylvania.

### I. BACKGROUND

Martin seeks declaratory judgment and money damages for various alleged violations of his rights under the United States Constitution, federal civil rights laws, and state law, all of which were allegedly committed by the Defendants in connection with his probation and incarceration on a state criminal conviction. The amended complaint details a litany of Martin's general grievances with respect to how he was treated by the state sentencing judge, by employees of the Lackawanna County Mental Health Court, Lackawanna County Adult

Probation/Parole Office, and Lackawanna County Prison, and by employees of various private-sector organizations that provided Martin with mental health treatment and community residential rehabilitation services during his periods of release on probation.[1] Martin explicitly disclaims any challenge to his underlying criminal conviction and sentence.

On November 24, 2008, Martin pleaded guilty to misdemeanor theft charges before the Court of Common Pleas of Lackawanna County. On February 25, 2009, he was sentenced by the Honorable Vito P. Geroulo[2] to serve a two-year term of probation, with the special conditions that he participate in a drug or alcohol treatment program and that he neither enter

---

[1] For example, Martin complains of the "shaming and contemptuous," "snide," "rude," "blaming and condescending," and "bitter and contemptuous" facial expressions and tone of voice used by various individuals when speaking with him. (Doc. 36, at 29; Doc. 36, at 35; Doc. 36, at 57; Doc. 36, at 60). He also complains of being "abusively ignor[ed]." (Doc. 36, at 47.

[2] The Court notes at this point that Martin has submitted a letter (Doc. 37) implying that the undersigned United States Magistrate Judge should recuse herself from this case due to her prior employment as a law clerk in the same court where Judge Geroulo currently sits. *See generally* 28 U.S.C. § 455. That prior employment, however, was more than a decade ago, and the undersigned clerked for a different judge of the court — the Honorable Patricia Corbett — not Judge Geroulo. "A judge's prior governmental service, even with the same entity appearing before the judge as a party, does not automatically require recusal. Rather, prior governmental service disqualifies a judge from presiding over a matter only if the judge directly participated in the matter in some capacity or expressed an opinion concerning the merits of a particular case." *Matson v. Bd. of Educ.*, 631 F.3d 57, 78 (2d Cir. 2011) (Straub, J., concurring in part and dissenting in part) (citing 28 U.S.C. § 455(b)(3), and Canon 3(C)(1)(e) of the Code of Conduct for United States Judges. The criminal proceedings against Martin in the Lackawanna County Court of Common Pleas did not commence until 2008, several years after the undersigned had completed her clerkship and left Judge Corbett's chambers for private practice. The undersigned therefore had no opportunity to directly participate in those proceedings, nor has she had any occasion to express an opinion concerning the merits of his case. *See* 28 U.S.C. § 455(b)(3); *see also Arizpe v. Slater*, 220 F.3d 584, 2000 WL 959514, at *1 (5th Cir. 2000) (unpublished per curiam table decision). Moreover, neither the undersigned nor any of the attorneys with whom she was affiliated in private practice served as a lawyer in the state criminal proceedings against Martin. *See* 28 U.S.C. § 455(b)(2). The undersigned was in no way involved in this case prior to her assignment to the matter as a magistrate judge, and, thus, her prior governmental service does not require recusal. *See Matson*, 631 F.3d at 79.

liquor establishments nor partake in the use of illegal drugs or alcohol.

On September 14, 2010, Judge Geroulo revoked Martin's probation and sentenced him to six to eighteen months confinement, including time served, to be followed by an additional term of probation. On January 4, 2011, Martin was released from confinement and resumed his probation.

On March 10, 2011, Martin alleges that he was accused of illegal drug use and incarcerated at Lackawanna County Prison on Judge Geroulo's order for a four-day period, ending March 14, 2011. On March 22, 2011, Martin alleges that he was arrested for missing curfew and incarcerated once again at Lackawanna County Prison at the direction of his probation officer. On April 19, 2011, Judge Geroulo once again revoked Martin's probation and sentenced him to eighteen to fifty-four months confinement, including time served.

Martin's original complaint was received and filed by the Court on August 3, 2012, while Martin was incarcerated at SCI Chester. (Doc. 1). On August 7, 2012, the Court granted Martin leave to proceed *in forma pauperis* in this action. (Doc. 6). Having reviewed the original complaint pursuant to 28 U.S.C. § 1915(e)(2), the Court noted in its order that Martin's original complaint failed to state a claim upon which relief can be granted, and it granted Martin leave to file an amended complaint. (Doc. 6). After receiving several extensions, Martin filed his amended complaint on August 5, 2013. (Doc. 36). In the interim, Martin was released from incarceration on parole. (See Doc. 24; Doc. 30; Doc. 33). The matter is now before the Court pursuant to its statutory obligation under 28 U.S.C. § 1915A and 28 U.S.C § 1915(e)(2) to screen the amended complaint and dismiss it if it fails to state a claim upon which relief can be granted.

## II. SECTION 1915A STANDARD

Under 28 U.S.C. § 1915A, the Court is obligated, prior to service of process, to screen a civil complaint in which a prisoner is seeking redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C.§ 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007). The Court must dismiss the complaint if it fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010). The Court has a similar obligation with respect to actions brought *in forma pauperis. See* 28 U.S.C. § 1915(e)(2)(B)(ii). *See generally Banks v. County of Allegheny*, 568 F. Supp. 2d 579, 587–89 (W.D. Pa. 2008) (summarizing prisoner litigation screening procedures and standards). In performing this mandatory screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Mitchell*, 696 F. Supp. 2d at 471; *Banks*, 568 F. Supp. 2d at 588.

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Although the Court must accept the allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). In deciding a Rule 12(b)(6) motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated

into the compliant by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).[3]

## III. DISCUSSION

### A. DEFENDANTS OMITTED FROM THE AMENDED COMPLAINT

In his original complaint, Martin named several defendants who are omitted from his amended complaint: (1) Lackawanna County; (2) Lackawanna County Treatment Court; (3) Lackawanna County Prison; (4) Lackawanna County Adult Probation and Parole; (5) Scranton Counseling Center; (6) Harbor House; (7) Moses Taylor Hospital; (8) "Matt," a psychology intern at the Lackawanna County Treatment Court; (9) "Courtney," a psychology intern at the Lackawanna County Treatment Court; (10) Paul Robertson; and (11) "Kristen," a supervisor at Harbor House. Generally, an amended complaint "supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading." *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1504 (3d Cir. 1996). Martin's comprehensive amended complaint does not specifically reference or adopt his original complaint. Accordingly, this action should be dismissed against the eleven defendants omitted from the amended complaint.

### B. REQUEST FOR DECLARATORY RELIEF

In his amended complaint, Martin asks that this Court "declare" that the alleged acts and omissions of the Defendants violated his federal rights. (Doc. 36, at 93). What he has requested, however, is not "declaratory relief in the true legal sense." *Corliss v. O'Brien*, 200 Fed.

---

[3] In addition to the complaint and exhibits attached thereto (Doc. 1), the Court has taken judicial notice of the publicly available docket of criminal proceedings in the Court of Common Pleas of Lackawanna County. *See Commonwealth v. Martin*, No. CP-35-CR-0002080-2008 (Lackawanna C.C.P.).

App'x 80, 84 (3d Cir. 2006); *see also* 28 U.S.C. § 2201; Fed. R. Civ. P. 57. "Declaratory judgment is inappropriate solely to adjudicate past conduct. Nor is declaratory judgment meant simply to proclaim that one party is liable to another." *Corliss* 200 Fed. App'x at 84. Accordingly, the amended complaint should be dismissed to the extent it requests declaratory judgment.

C. HIPAA CLAIM

Martin has asserted a claim alleging that two of the Defendants[4] — Leslie Newberry and an unknown nurse at Moses Taylor Hospital referenced only as "Nurse Staff" — violated "federal confidentiality laws designed to protect the privacy of the Plaintiff." (Doc. 36, at 88). Based on the other allegations of the amended complaint, Martin appears to claim that these Defendants violated federal privacy rules promulgated under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") § 264, Pub. L. 104-191, 110 Stat. 1936, 2033–34 (codified at 42 U.S.C. § 1320d-2 note). However, there is no federal private right of action under HIPAA. *Ball v. D'Addio*, No. 1:12-CV-815, 2012 WL 3598412, at *7 (M.D. Pa. July 10, 2012); *Dominic J. v. Wyoming Valley W. High Sch.*, 362 F. Supp. 2d 560, 573 (M.D. Pa. 2005). Accordingly, the amended complaint should be dismissed to the extent it alleges a claim under HIPAA for failure to state a claim upon which relief can be granted.

D. ADA CLAIM

Martin has asserted a claim under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131, *et seq.*[5] (Doc. 36, at 90–91). Title II of the ADA applies only to

---

[4] It is not entirely clear, but Martin may also have intended to assert a HIPAA claim against defendants Allison, Mecca, and Russo on a retaliation theory of some sort.

[5] Early on in his amended complaint, Martin references the Rehabilitation Act in conjunction with the ADA. Later, in setting forth his ADA claim, Martin omits any reference

the "services, programs, or activities of a *public entity*." 42 U.S.C. § 12132 (emphasis added).

Thus, "[u]nder Title II of the ADA, plaintiffs may not sue individual defendants in their

personal capacities, but must instead sue the state, state entities, or defendants in their official

capacities." *George v. Pa. Dep't of Corr.*, No. 3:CV-09-1202, 2010 WL 936778, at *7 (M.D. Pa.

Mar. 11, 2010); *see also Heckensweiler v. McLaughlin*, 517 F. Supp. 2d 707, 717 (E.D. Pa. 2007).

To the extent Martin's ADA claim is directed at the Defendants in their personal capacities,[6] it

must be dismissed as not cognizable under the ADA. *George*, 2010 WL 936778, at *7;

*Heckensweiler*, 517 F. Supp. 2d at 717.

      With respect to Martin's official-capacity ADA claim, however, the analysis continues.

To establish a violation of Title II of the ADA, a plaintiff must show that he or she: (1) is a

qualified individual with a disability; (2) was excluded from participation in or denied the

benefits of the services, programs, or activities of a public entity, or was subjected to

---

to the Rehabilitation Act. Even if the *pro se* amended complaint were construed to assert a
Rehabilitation Act claim, it fails to state a Rehabilitation Act claim upon which relief can be
granted. To establish a violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, a
plaintiff must prove that: (1) he or she is an "individual with a disability" under the Act; (2) he
or she is "otherwise qualified" for the services sought; (3) he or she was denied from the services
sought "solely by reason of her or his disability"; and (4) the program or activity in question
receives federal financial assistance." 29 U.S.C. § 794(a); *see also Wagner v. Fair Acres Geriatric
Ctr.*, 49 F.3d 1002, 1009 (3d Cir. 1995). Here, the complaint does not allege that the state court,
its probation office, the county prison, or the private-sector mental health treatment and
community residential rehabilitation service providers receive any federal funding.
Furthermore, the complaint does not allege that Martin's disability was the sole reason for his
alleged mistreatment by the Defendants.

    [6] Although Martin's amended complaint clearly states that his constitutional claims are
brought against the Defendants in their personal capacities, and that his state law tort claims are
brought against them in their official capacities, the amended complaint fails to specify whether
the ADA claim is brought against the Defendants in their personal or official capacities, or
both. This Court is obliged to construe Martin's *pro se* amended complaint liberally. *See generally
Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–46 (3d Cir. 2013). Therefore, it has
considered the ADA claim to be directed at the Defendants in both their personal and official
capacities.

discrimination by any such entity; and (3) was excluded because of his or her disability. 42 U.S.C. § 12132; *New Directions Treatment Servs. v. City of Reading*, 415 F. Supp. 2d 501, 513 (E.D. Pa. 2005), *rev'd on other grounds*, 490 F.3d 293 (3d Cir. 2007); *Schorr v. Borough of Lemoyne*, 243 F. Supp. 2d 232, 235 (M.D. Pa. 2003). The amended complaint does not identify any "services, programs, or activities of a public entity" from which Martin was excluded from participating. Indeed, where specific programs or services are identified in the amended complaint, Martin does not allege that he was excluded from participating or denied the benefit of these programs or services, but instead he complains that he was forced to participate in additional drug and alcohol treatment programs that were duplicative of those in which he was already participating or had already completed. (Doc. 36, at 35; Doc. 36, at 36). Martin further complains that he was burdened by an "overabundance of program activities" that "overwhelmed, stressed, and [caused him] pain and suffering." (Doc. 36, at 50–52).

Moreover, the amended complaint contains only conclusory allegations of discrimination. *See Nails v. Laplante*, 596 F. Supp. 2d 475, 481–82 (D. Conn. 2009) (dismissing ADA claim that failed to include "non-conclusory allegations of discriminatory animus or ill will based on his disability"). Martin fails to allege any facts whatsoever to plausibly demonstrate that he was excluded from participation in any programs, or otherwise subjected to discrimination, *because of* his disability. *See New Directions*, 490 F.3d at 300–01 & n.4 ("[T]o make out a claim under the ADA, the plaintiff need only show that intentional discrimination was the *but for* cause of the allegedly discriminatory action."); *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 158 (3d Cir. 1995) ("[A] plaintiff need prove only that the illicit factor 'played a role in the [defendant's] decisionmaking process and that it had a determinative effect on the outcome of that process."); *Lamberson v. Pennsylvania*, ___ F. Supp. 2d ____, 2013 WL 4001093,

at *13 (M.D. Pa. Aug. 5, 2013) ("[T]o satisfy the ADA's causation requirement, the plaintiff must establish that the exclusion or denial of a government benefit or service would not have occurred absent the plaintiff's disability or the defendant's failure to provide a reasonable accommodation.").

Accordingly, the amended complaint should be dismissed to the extent it alleges a claim under the ADA for failure to state a claim upon which relief can be granted.

### E. SECTION 1983 CLAIMS

Martin has asserted several different constitutional claims, brought pursuant to 42 U.S.C. § 1983. In particular, Martin asserts that various defendants violated his First Amendment right to free speech (Doc. 36, at 89–90), his Eighth Amendment right to be free from cruel and unusual punishment (Doc. 36, at 84–85), his Fourteenth Amendment right to equal protection (Doc. 36, at 85–86), and his Fourteenth Amendment procedural due process rights (Doc. 36, at 88–89).

Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To establish a § 1983 claim, a plaintiff must establish that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995).

### 1.  Section 1983 Claims Barred by *Heck v. Humphrey* and Its Progeny

Most of the amended complaint concerns the criminal proceedings against Martin, his supervision while on probation, and his probation revocation proceedings. But claims related to these proceedings are not cognizable under § 1983 under the favorable termination rule articulated by the Supreme Court of the United States in *Heck v. Humphrey*, 512 U.S. 477 (1994).

In *Heck*, the Supreme Court held that, where judgment in favor of a plaintiff in a § 1983 action for damages would necessarily imply the invalidity of the plaintiff's conviction or sentence, the plaintiff must first demonstrate "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus [under] 28 U.S.C. § 2254." *Heck*, 512 U.S. at 486–87. In *Wilkinson v. Dotson*, 544 U.S. 74 (2005), the Supreme Court reaffirmed this rule and broadened it to encompass equitable remedies as well, holding that "a state prisoner's § 1983 action is barred (absent prior invalidation) — no matter what the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) — *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson*, 544 U.S. at 81–82.

First, Martin makes several allegations with respect to his original criminal prosecution, conviction, and sentencing in 2008 and 2009. He appears to allege that his criminal conviction was based upon fabricated evidence, that he was unable to knowingly and voluntarily enter into a guilty plea because due to the effect of certain psychotropic medications, that he was denied the effective assistance of counsel at his criminal proceedings, and that he was intimidated into acquiescence by his defense counsel and the presiding judge. But notwithstanding his explicit

disclaimer of any intention to challenge his underlying conviction and sentence, these claims implicate the validity of his conviction and sentence. Unless and until his "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus," any claim for damages or equitable relief bearing a relationship to Martin's conviction and sentence is not cognizable under 28 U.S.C. § 1983. *See Heck*, 512 U.S. at 486–87.

Second, Martin makes several allegations with respect to separate probation revocation proceedings in 2009, 2010, and 2011. Just as with his original criminal proceedings, under *Heck*, any claims related to these probation revocation convictions and sentences are not cognizable under § 1983 unless they are first overturned on appeal or declared invalid. *See Shreve v. Minium*, No. 1:CV-12-2128, 2012 WL 6137992, at *5 (M.D. Pa. Nov. 19, 2012) (citing *Heck*, 512 U.S. at 486, and *Williams v. Consovoy*, 453 F.3d 173, 177 (3d Cir. 2006)).

Third, Martin makes several allegations with respect to the specific terms or conditions of his probation, such as his involuntary assignment to the Mental Health Treatment Court for supervision of his probation, conditions that required him to participate in duplicative treatment programs or too many treatment programs at a time, and conditions directing him to change from his long-time psychiatrist, Dr. DeSoto, to a new psychiatrist at Scranton Counseling Center, and then back again. Several courts, including a sister court here in the Third Circuit, have held that, "when a plaintiff attacks a condition of his parole, probation, or supervised release that infringes on his liberty, he is essentially challenging a portion of his sentence and, thus, his claims may only be brought in habeas proceedings." *D'Amario v. Weiner*, Civil Action No. 12-6098, 2013 WL 622110, at *6–*7 (D.N.J. Feb. 19, 2013); *see also Drollinger v. Milligan*,

552 F.2d 1220, 1224–25 (7th Cir. 1977); *Cordell v. Tilton*, 515 F. Supp. 2d 1114, 1121–22 (S.D. Cal. 2007). Thus, under *Heck*, any claims for damages or equitable relief related to the conditions of Martin's probation are not cognizable under § 1983 unless his sentence is first overturned on appeal or declared invalid. *D'Amario*, 2013 WL 622110, at *6–*7; *Cordell*, 515 F. Supp. 2d 1121–22.

Accordingly, under *Heck*, Martin's § 1983 claims against Vito P. Geroulo, Dennis Russo, and Kevin Gownley are not cognizable, and therefore should be dismissed as legally frivolous. *Saunders v. Bright*, 281 Fed. App'x 83, 85 (3d Cir. 2008) (per curiam); *Ruth v. Richard*, 139 Fed. App'x 470, 471 (3d Cir. 2005) (per curiam); *Boykin v. Siena House Gaudenzia Program*, 464 F. Supp. 2d 416, 424 (M.D. 2006). To the extent Martin asserts a § 1983 claim against Leslie Newberry based on her alleged role in a thirteen-day delay in his release from incarceration and return to probation in December 2010 and January 2011, it is barred by *Heck* as a non-cognizable challenge to the validity of the duration of his confinement and should be dismissed as legally frivolous. *Almahdi v. Bourque*, 386 Fed. App'x 260, 262 (3d Cir. 2010). To the extent Martin asserts a § 1983 claim against Samantha Weissner based on her testimony as a witness at Martin's April 2011 probation revocation hearing, it too is barred by *Heck* as a non-cognizable challenge to the validity of his probation revocation conviction and should be dismissed as legally frivolous. *Ruth*, 139 Fed. App'x at 471; *Boykin*, 464 F. Supp. 2d at 424.

### 2. Claim Against Dr. Malik

Martin has asserted an Eighth Amendment claim against Dr. Malik, a psychiatrist employed at Lackawanna County Prison. While he was incarcerated at Lackawanna County Prison for forty-five days in 2009 for violation of probation, Martin alleges that Dr. Malik acted with deliberate indifference to his health and safety by withholding an anti-psychotic

medication previously prescribed to Martin by his private psychiatrist, and by stopping an anti-depressant medication after three days; Martin acknowledges that he continued to receive prescription medications for other health conditions. When he was once again incarcerated at Lackawanna County Prison between March 2011 and December 2012 for violation of probation, Martin alleges that Dr. Malik acted with deliberate indifference to his health and safety by withholding psychiatric medications and failing to meet with him during a six-day period at the start of his incarceration; but Martin does not allege any further failure to provide him with medical treatment after this initial six-day period. Indeed, Martin does not allege that he was denied psychiatric treatment altogether, but merely that Dr. Malik suspended or discontinued the medications prescribed by Martin's private psychiatrist.

To state a cognizable Eighth Amendment claim for improper medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "This standard is two-pronged. It requires deliberate indifference on the part of prison officials and it requires the prisoner's medical needs to be serious." *West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1978). With respect to the deliberate indifference prong of the Estelle standard, prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients. *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979). "[M]ere allegations of malpractice do not raise issues of constitutional import." *Monmouth County Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987). A mere difference of opinion between the prison medical staff and the inmate regarding the diagnosis or treatment received by the inmate does not constitute deliberate indifference. *Lanzaro*, 834 F.2d at 346; *Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). Moreover, a prison doctor's use of a different treatment regimen than that

prescribed by a private physician does not amount to deliberate indifference. *Johnson v. Cash*, __

Fed. App'x ___, 2013 WL 5584963, at *2 (3d Cir. Oct. 11, 2013) (citing *McCracken v. Jones*, 562

F.2d 22, 24 (10th Cir. 1977)). In the amended complaint, Martin fails to allege anything more

than a difference of opinion between Dr. Malik and himself or his private psychiatrist with

respect to his course of treatment.

Accordingly, Martin's § 1983 claim against Dr. Malik should be dismissed for failure to

state a claim upon which relief can be granted.

### 3.  Claims Against Bill Thompson

Martin has asserted a claim against Bill Thompson, a counselor at Lackawanna County

Prison. On or about April 6, 2011, while Martin was incarcerated and awaiting his third

probation revocation hearing, Martin's friend and business mentor, Steve Lawrence, sought to

provide Martin with some assistance. Lawrence prepared a "consent to release information"

form and a power-of-attorney form for Martin to sign, which Lawrence then intended to use to

make inquiries with certain agencies on Martin's behalf. Lawrence mailed the paperwork to

Thompson and called to ask that he deliver it to Martin for signature. Thompson refused to do

so. Lawrence mailed another copy of the forms directly to Martin, which he received on April

9, 2011, but did not execute. In the interim, Martin alleges that Thompson and other defendants

verbally harassed him and made fun of Lawrence's efforts to help him. Martin claims that he

did not sign the documents because this verbal harassment agitated and intimidated him. (Doc.

36, at 72–74).

A prisoner's right to receive mail is protected by the First and Fourteenth Amendments

to the Constitution. *Procunier v. Martinez*, 416 U.S. 396, 409 (1974) (citing *Lamont v. Postmaster*

*Gen.*, 381 U.S. 301 (1965)). But here, there is nothing to suggest any interference with Martin's

mail. Thompson simply refused Lawrence's request to personally deliver certain paperwork and to act as an intermediary in securing Martin's signature on it. When mailed directly to Martin, Lawrence's correspondence reached its intended destination. No censorship or other interference has been alleged.

Moreover, it is well established that mere words spoken to a prisoner by a prison official, even if those words are harsh, do not amount to a violation of the prisoner's civil rights by the official. *Johnson v. Glick*, 481 F.2d 1028, 1033 n.7 (2d Cir. 1973); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979). "Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws." *Dewalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000).

Accordingly, Martin's § 1983 claim against Bill Thompson should be dismissed for failure to state a claim upon which relief can be granted.

### 4.  Claims Against Non-State Actors

Much of the rest of the amended complaint constitutes a recital of general grievances with respect to how Martin was treated by employees of Scranton Counseling Center and Harbor House, private nonprofit organizations that provided Martin with mental health treatment and community residential rehabilitation services, respectively, during his periods of release on probation, and an unnamed nurse at Moses Taylor Hospital, a private hospital.

Martin complains that he was treated poorly by several employees of Scranton Counseling Center. First, he alleges that Leslie Newberry, when she was serving as his case manager at Scranton Counseling Center was "rude," "snide," and "intrusive," insisting that she be permitted to attend Martin's otherwise private appointments with medical providers, and that she received confidential medical information about Martin from an unnamed nurse at

Moses Taylor Hospital, identified in the amended complaint as defendant "Nurse Staff," and relayed that information to Martin's probation officer. Next, Martin complains that Samantha Weissner, Newberry's successor as his case manager at Scranton Counseling Center scheduled him for a psychiatrist appointment without his consent, and that she later exhibited "bitter and contemptuous facial expression and tone of voice" while speaking with Martin and "chastise[d]" him about "minor flaws in his daily routine." Finally, Martin complains that a psychiatrist at Scranton Counseling Center, Dr. Norien, changed Martin's psychiatric medications, which "totally messed up [his] psychiatric care and sabotaged [his] mental health."

Martin similarly complains that he was treated poorly by several employees of Harbor House. First, Martin alleges that Keree Mecca, a case worker at Harbor House, charged him for rent at Harbor House when he was incarcerated in Lackawanna County Prison, that she packed his personal belongings away while he was incarcerated, which resulted in the loss of or damage to certain unspecified items, and that, on one occasion, Mecca allegedly gave a ride to other Harbor House residents but explicitly refused to let Martin ride along. Next, Martin complains that Allison (last name unknown), a supervisor at Harbor House, established a new policy that Harbor House drivers would no longer give rides to residents other than to medical or probation appointments, requiring Martin and other residents to take the bus instead, and that, together with Mecca, Allison "harassed" him by "sham[ing] him for minor flaws in his daily routine" and treating him with a "blaming and condescending tone of voice and facial expression," allegedly in retaliation for Martin's exercise of free speech during group therapy sessions. Finally, Martin complains that Jim (last name unknown), a staff member at Harbor House, yelled at Martin and threatened to tell Judge Geroulo to throw him in jail when Martin

balked at taking a bus intended for residents going to appointments at Scranton Counseling when Martin was instead going to a probation appointment.

As previously noted, a § 1983 plaintiff must establish that the defendants, *acting under color of state law*, deprived the plaintiff of a right secured by the United States Constitution. *Mark,* 51 F.3d at 1141. The "under color of state law" element of Section 1983 excludes from its reach "merely private conduct, no matter how discriminatory or wrongful." *Blum v. Yaretsky,* 457 U.S. 991, 1002 (1982). Under limited circumstances, a private individual may be liable under § 1983 if his or her conduct is so closely related to governmental conduct that it can be fairly viewed as conduct of the state itself. *See Mark,* 51 F.3d at 1142–43 (detailing the various tests used to analyze whether private conduct may be treated as state action).

None of the conduct alleged by these private individuals can be fairly viewed as state action. First, it is well established that the provision of custody, care and rehabilitative services to mentally ill persons is not a traditional and exclusive prerogative of Pennsylvania. *Zarebicki v. Devereux Found.,* Civil Action No. 09-6205, 2011 WL 2582140, at *5 (E.D. Pa. June 30, 2011); *see also Hodge v. Paoli Mem'l Hosp.,* 576 F.2d 563, 564 (3d Cir. 1978) (private hospital); *Harvey v. Mohammed,* 841 F. Supp. 2d 164, 185–86 (D.D.C. 2012) (privately owned group home); *Lewis v. Beach,* No. 3:10CV731, 2012 WL 3069409, at *4 (E.D. Va. July 27, 2012) (case manager employed by private rehabilitation services provider); *Kolley v. Adult Protective Servs.,* 786 F. Supp. 2d 1277, 1311 (E.D. Mich. 2011) (privately owned group home); *Birdsall v. Lee,* No. 08-cv-00081, 2008 WL 4080197, at *2 (D. Colo. Aug. 5, 2008) (case manager employed by private entity); *Sybalski v. Indep. Grp. Home Living Program, Inc.,* No. 06 CV 4899, 2007 WL 1202864, at *4–*5 (E.D.N.Y. Apr. 24, 2007) (privately owned group home); *Klavan v. Crozer-Chester Med. Ctr.,* 60 F. Supp. 2d 436, 441 & n.5 (E.D. Pa. 1999) (private hospital and its employees); *Knox v.*

*Howard*, Civ. A. No. 86-7493, 1987 WL 15204, at *1 (E.D. Pa. Aug. 3, 1987) (counselor employed by privately owned group home). Second, beyond his conclusory allegations of a conspiracy, Martin fails to allege facts to plausibly demonstrate a symbiotic relationship between the State and these private actors — that is, that "the State has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Mark*, 51 F.3d at 1142 (alterations omitted); *see also Douglas v. N.Y. State Adirondack Park Agency*, 895 F. Supp. 2d 321, 374 (conclusory allegation of symbiotic relationship insufficient). Finally, with respect to the specific conduct by these six remaining defendants of which Martin complains, the amended complaint fails to allege facts to plausibly demonstrate that they "acted with the help of or in concert with state officials." *Mark*, 51 F.3d at 1142; *Cmty. Med. Ctr. v. Emergency Med. Servs.*, 712 F.2d 878, 881 (3d Cir. 1983). Indeed, there is nothing to suggest that any of the government officials in this case had knowledge of, much less had direct involvement in, the complained of conduct. *See Cmty. Med. Ctr.*, 712 F.2d at 881.

Moreover, even if it were assumed that these defendants were acting under color of state law, the amended complaint fails to state a cognizable § 1983 claim upon which relief can be granted with respect to each of these defendants. *See Johnson*, 2013 WL 5584963, at *2 (mere difference of opinion between doctors as to appropriate course of treatment is insufficient to state a civil rights claim under § 1983); *Bittner v. Snyder County*, 345 Fed. App'x 790, 793 (3d Cir. 2009) (no constitutional right to transportation); *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 214 (3d Cir. 2001) (no cognizable § 1983 claim where state law permitted civil action for conversion, which satisfied requirements of due process); *Murry v. Oakland County Prob.*, No.2:09-CV-11395, 2009 WL 1259722, at *3 (E.D. Mich. 2009) (allegations of verbal

harassment and threats are insufficient to state a civil rights claim under § 1983); *Vicino v. Kennebec Valley Mental Health Ctr.*, No. Civ. 00-0079-B-H, 2000 WL 762232, at *2 (D. Me. Apr. 27, 2000) (finding no constitutional right to transportation and dismissing § 1983 claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)); *Faison v. Parker*, 823 F. Supp. 1198, 1201–05 (E.D. Pa. 1993) (no constitutional violation in disclosure of confidential medical information *to* state court and probation officials).

Accordingly, Martin's § 1983 claims against Leslie Newberry, Samantha Weissner, Dr. Norien, Keree Mecca, Allison (last name unknown), Jim (last name unknown), and "Nurse Staff" should be dismissed for failure to state a claim upon which relief can be granted.

   F. Section 1985 Conspiracy Claim

Martin asserts claims that Bill Thompson, Dennis Russo, and Judge Geroulo conspired against him in violation of 42 U.S.C. § 1985(2) and (3). (Doc. 36, at 91–92). Martin alleges that, in connection with his then-upcoming April 19, 2011, probation revocation hearing, these three defendants, along with a fourth individual identified in the amended complaint only as "Robertson," conspired to intimidate Martin, his friend Lawrence, and a private investigator named Ben Merring and interfere with Martin's exercise of unspecified constitutional rights. (Doc. 36, at 68–74)

Section 1985(2) prohibits conspiracies to intimidate parties to litigation and their witnesses. The elements of a § 1985(2) claim are: "(1) a conspiracy between two or more persons (2) to deter [a party or] a witness by force, intimidation or threat from attending court or testifying freely in any pending matter, which (3) results in injury to the plaintiffs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1206 (3d Cir. 1988).

Section 1985(3) prohibits conspiracies to violate constitutional rights. The elements of a § 1985(3) claim are:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 828–29 (1983). The second element requires that the actions were motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Scott*, 463 U.S. at 835.

The key to disposition of these claims, however, is that they concern Martin's April 19, 2011, probation revocation hearing. Judgment in favor of Martin on these claims would necessarily imply the invalidity of his April 2011 probation revocation conviction and sentence., and they are therefore barred by the favorable termination rule of *Heck v. Humphrey*. *Zhai v. Cedar Grove Municipality*, 183 Fed. App'x 253, 255 (3d Cir. 2006) (per curiam) (finding § 1985 conspiracy claims barred by *Heck*); *see also Robinson v. Rudenstein*, Civil Action No. 07-3160, 2008 WL 623594, at *4 (E.D. Pa. Mar. 6, 2008) ("[A]lthough *Heck* itself involved a claim under 42 U.S.C. § 1983, its rule applies with equal force to claims brought under 42 U.S.C. §§ 1985 and 1986.").

Accordingly, under *Heck*, Martin's § 1985 conspiracy claims against Vito P. Geroulo, Dennis Russo, and Bill Thompson are not cognizable, and therefore should be dismissed as legally frivolous. *Rashid v. Monteverde & Hemphill*, No. CIV. A. 95-2449, 1997 WL 360922, at *8 (E.D. Pa. June 24, 1997).

## G. STATE LAW CLAIMS

Martin has also asserted state law claims for intentional infliction of emotional distress (Doc. 36, at 86–87) and for violation of unspecified state privacy laws (Doc. 36, at 87–88).

Where a district court has dismissed all claims over which it had original jurisdiction, the Court may decline to exercise supplemental jurisdiction over state law claims. 28 U.S.C. § 1367(c)(3). Whether the Court will exercise supplemental jurisdiction is within its discretion. *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009). That decision should be based on "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Ordinarily, when all federal law claims have been dismissed and only state law claims remain, the balance of these factors indicates that these remaining claims properly belong in state court. *Cohill*, 484 U.S. at 350. Finding nothing in the record to distinguish this case from the ordinary one, the balance of factors in this case "point[s] toward declining to exercise jurisdiction over the remaining state law claims." *See Cohill*, 484 U.S. at 350 n.7. Therefore, it is recommended that the Plaintiff's state law claims be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

### H. LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). In this case, Martin has already had an opportunity to amend the complaint to state a viable cause of action. Even after amendment, Martin's claims lack merit. Dismissal without further leave to amend is recommended, as allowing Martin leave to amend his pleadings for a second time would be futile.

### I. PLRA "THREE STRIKES" WARNING

The Plaintiff is hereby notified that a prisoner may not bring a civil action or appeal a civil judgment under 28 U.S.C. § 1915,

if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

If this recommended disposition is adopted by the presiding United States District Judge, the dismissal of all of Martin's claims pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), 28 U.S.C. § 1915(e)(2)(B)(ii), and 28 U.S.C. § 1915A(b)(1) will constitute a "strike" under 28 U.S.C. § 1915(g), and the accumulation of additional strikes may bar him from proceeding *in forma pauperis* in later cases absent a showing of imminent danger. *See generally* Byrd v. Shannon, 715 F.3d 117, 126 (3d Cir. 2013).

## IV. RECOMMENDATION

Based on the foregoing, it is recommended that:

1. The amended complaint (Doc. 36) be **DISMISSED WITH PREJUDICE** with respect to all federal law claims pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), 28 U.S.C. § 1915(e)(2)(B)(ii), and 28 U.S.C. § 1915A(b)(1);

2. The amended complaint (Doc. 36) be **DISMISSED WITHOUT PREJUDICE** with respect to all state law claims pursuant to 28 U.S.C. § 1367(c)(3); and

3. The Clerk be directed to **CLOSE** this case.

BY THE COURT:

Dated: March 26, 2014

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

JACOB MARTIN,

               Plaintiff,

    v.

LACKAWANNA COUNTY, et al.,

               Defendants.

CIVIL ACTION NO. 3:12-CV-01507

(KOSIK, J.)
(MEHALCHICK, M.J.)

**NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **March 26, 2014**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**Dated: March 26, 2014**

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**